UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DICKSON ADETUYI,

           Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO,

           Defendant.

Case No.  13-cv-04273-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 26

## INTRODUCTION

In this employment discrimination case, Plaintiff Dickson Adetuyi alleges that Defendant City and County of San Francisco ("the City") failed to promote him because of his race and retaliated against him for filing a discrimination lawsuit in 2007.  Pending before the Court is the City's Motion for Summary Judgment, filed June 26, 2014.  Dkt. No. 26.  Adetuyi filed an Opposition on July 10, 2014 (Dkt. No. 34), and the City filed a Reply on July 15, 2014 (Dkt. No. 41).  The Court heard oral argument on July 31, 2014.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court GRANTS the City's Motion for the reasons set forth below.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Adetuyi, who is Black, has been an employee of the City since November 2005, as a 2908 Eligibility Worker and Financial Counselor.  Adetuyi Decl. ¶ 10, Dkt. No. 36; Compl. ¶ 3, Dkt. No. 1; Pl.'s Separate Statement of Undisputed Facts ("PUF") No. 20, Dkt. No. 35.  On March 19, 2007, he filed a Complaint in the San Francisco Superior Court, Case No. CGC-07-461476, against the City and his former supervisor titled "Complaint for Damages and Injunctive Relief for Harassment, Retaliation and Failure to Prevent Harassment and Retaliation."  Def.'s Separate Statement of Undisputed Facts

United States District Court
Northern District of California

United States District Court
Northern District of California

("DUF") No. 1, Dkt. No. 29.  Adetuyi brought the lawsuit "[b]ecause of racial discrimination practiced against him."  Compl. ¶ 4.  Adetuyi prevailed in the jury trial portion of the case.  PUF No. 1.  However, on March 11, 2009, the Superior Court granted the City's Motion for Judgment Notwithstanding the Verdict.  DUF No. 2.  On May 17, 2011, the Court of Appeal affirmed the judgment in the City's favor.  *Id.* No. 3.  The City was awarded its costs of suit as the prevailing party in the trial court and its costs on appeal for an aggregate judgment in the amount of $70,436.01.  *Id.* No. 4.

On June 7, 2011, the City adopted an Eligible List for the 2909 Hospital Eligibility Worker Supervisor position.  *Id.* No. 5.  Adetuyi was one of 12 candidates that ranked number one on the eligible list.  *Id.* No. 6.  Under the Civil Service Rules governing the examination, the candidates in the top three ranks were all equally available for selection for promotion from the eligibility list.  *Id.* No. 7.  Twenty candidates were in the top three ranks – 12 candidates, including Adetuyi, were in Rank 1; 3 candidates were in Rank 2; and 5 candidates were in Rank 3.  *Id.* No. 8.  The City made five permanent promotional appointments from the eligible list on June 10, 2011.  *Id.* No. 9.  The five candidates selected had been serving in provisional 2909 Eligibility Worker Supervisor positions ranging from six months to three years at the time of their permanent appointments.  *Id.* No. 10.  Neither Adetuyi nor the 14 other eligible candidates that were not selected had served in a provisional 2909 Eligibility Worker Supervisor positions.  *Id.* No. 11.

Under the City's Civil Service Rules, it was permissible for the City to select the five successful candidates for permanent appointments from provisional appointments because they each met the following four requirements: (1) successfully completed the examination process; (2) is on the eligible list; (3) is reachable on the eligible list; and (4) is performing competently and effectively in the department.  *Id.* No. 12.

On June 22, 2012, David Dietrich, a 2909 Eligibility Worker Supervisor, retired from his employment with the City.  *Id.* No. 13.  Mr. Dietrich was a witness for the City at the prior trial, but he testified in favor of Adetuyi.  PUF No. 4.  By this time, the Eligible List from which the five permanent appointments in 2011 were made had expired on June 7, 2012.  DUF No. 15.  Diana Guevara is Manager VI for the Managed Care and Patient Finance Division for the

1   Department of Public Health for the City's Department of Public Health.  Guevara Decl. ¶ 2, Dkt.

2   No. 33.  Adetuyi contends that Ms. Guevara, who is Filipina and who testified against him at the

3   former trial, requested that the eligibility list not be extended as soon as she learned that Mr.

4   Dietrich was going to retire.  PUF Nos. 2-3, 5, 22; Guevara Decl. ¶ 2.

5          After Mr. Dietrich's retirement, the City selected Ilma Batres, who is Hispanic, in August

6   2012 as an acting supervisor.  DUF No. 14; PUF No. 21.  Ms. Batres served as a witness for the

7   City at the prior trial.  PUF No. 6.  Her previous experience is the subject of dispute.  The City

8   states that she "had previously served intermittently as an acting supervisor since 2006 and had

9   knowledge and experience relevant to the position."  DUF No. 16.  Adetuyi states that she "had

10  not served as an acting supervisor at Laguna Honda, in Plaintiff's Section for the preceding eight

11  years."  PUF Resp. to DUF No. 16.  It is undisputed that Ms. Guevara participated in and

12  approved the decision to promote Ms. Batres.  Def.'s Resp. to PUF No. 10, Dkt. No. 44.

13         Adetuyi filed the present Complaint on September 16, 2013, alleging five causes of action:

14  (1) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

15  2000e-2; (2) retaliation under Title VII, 42 U.S.C. § 2000e-3; (3) race discrimination under

16  California's Fair Employment and Housing Act ("FEHA"); (4) retaliation under FEHA; and (5)

17  failure to prevent in violation of California Government Code section 12940(k).

18         The City filed its Motion for Summary Judgment on June 26, 2014.  The City first argues

19  that it is entitled to summary judgment on Adetuyi's Title VII and FEHA claims concerning the

20  2011 promotions because he failed to exhaust his administrative remedies.  Mot. at 5.  As to

21  Adetuyi's non-selection in 2012 as Acting Supervisor, the City argues that he cannot establish a

22  prima facie claim of discrimination because he was not denied a promotion.  *Id.* at 8.  Even if he

23  could, the City argues that Adetuyi cannot rebut its legitimate nondiscriminatory reasons for

24  selecting another City employee that had previously served as an acting supervisor.  *Id.* at 9.

25         As to his 2012 retaliation claim, the City argues Adetuyi cannot establish a temporal nexus

26  between his identified protected conduct (i.e. filing his previous lawsuit) and the purported

27  adverse action (i.e. the City's selection of a person other than Adetuyi to perform acting supervisor

28  duties) because there is a gap of more than four years between the two.  *Id.* at 11.  Even if he

United States District Court
Northern District of California

3

could, the City contends that Adetuyi cannot rebut its legitimate nondiscriminatory reasons for selecting another City employee that had previously served as an acting supervisor. *Id.* Finally, as to Adetuyi's failure to prevent claim, the City maintains that it must fail because he cannot establish underlying FEHA claims. *Id.* at 12.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*,

United States District Court
Northern District of California

237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

The principles of summary judgment apply equally in discrimination cases.  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983).  Mere assertions that a defendant had a discriminatory motive or intent in taking an adverse action are inadequate to defeat summary judgment unless supported by substantial factual evidence.  *Id.*  "A party cannot defeat a motion for summary judgment by offering 'purely conclusory allegations of alleged discrimination, absent concrete particulars . . ., for to do so would necessitate a trial in all Title VII cases.'"  *Nova v. Dalton*, 1998 WL 355537, at *3 (N.D. Cal. June 30, 1998) (citing *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992)).

### REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, the City requests that the Court take judicial notice of the following documents: (1) the Complaint filed by Adetuyi on March 19, 2007 in San Francisco Superior Court, Case No. CGC-07-461476, against the City and his former supervisor (Exh. 1); (2) March 11, 2009 Order of the San Francisco Superior Court in Case No. CGC-07-461476 granting the City's Motion for Judgment Notwithstanding the Verdict (Exh. 2); (3) May 17, 2011 California Court of Appeal Decision No. A124936, affirming the trial court's judgment in the City's favor (Exh. 3); (4) Amended Judgment awarding the City its costs of suit as the prevailing party in Case No. CGC-07-461476 (Exh. 4); (5) the Complaint in this action (Exh. 5); (6) June 18, 2013 Intake Questionnaire filed by Adetuyi with the United States Equal Employment Opportunity Commission ("EEOC") (Exh. 6); (7) October 21, 2013 letter to Adetuyi from the EEOC and the California Department of Fair Employment and Housing ("DFEH"), indicating receipt of his intake questionnaire and charge of discrimination (Exh. 7); (8) October 23, 2013 Charge signed by Adetuyi (Exh. 8); (9) July 16, 2013 letter from the EEOC to Adetuyi indicating that it received his intake form (Exh. 9); and (10) August 13, 2013 DFEH right-to-sue letter (Exh. 10).  Dkt. No. 28.

Federal Rule of Evidence 201(b)(2) allows judicial notice of "a fact that is not subject to

United States District Court
Northern District of California

1    reasonable dispute because it can be accurately and readily determined from sources whose

2    accuracy cannot reasonably be questioned." The Court may take judicial notice of court filings.

3    *Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (it is appropriate

4    to take judicial notice of court filings and other matters of public record such as pleadings in

5    related litigation); *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n. 3 (9th Cir.

6    2005) (courts may take judicial notice of the docket in related cases as materials from a proceeding

7    in another tribunal are appropriate for judicial notice). Accordingly, the Court GRANTS the

8    City's request to take judicial notice of Exhibits 1 through 5. Judicial notice of Adetuyi's EEOC

9    Intake Questionnaire and DFEH Charge, the EEOC and DFEH letters indicating receipt of his

10   intake questionnaire and charge of discrimination, and the DFEH right-to-sue letter is also proper.

11   *Contreras v. UAL Corp.*, 2014 WL 554485, at *4 (N.D. Cal. Feb. 7, 2014). Accordingly, the

12   Court GRANTS the City's request as to Exhibits 6 through 10.

**EXHAUSTION AND STATUTE OF LIMITATIONS**

13

14   **A.      FEHA**

15           The City first argues that it is entitled to summary judgment on Adetuyi's FEHA claims

16   concerning the 2011 promotions because he failed to exhaust his administrative remedies. Mot. at

17   5. Specifically, the City maintains that the DFEH provided Adetuyi a right-to-sue notice only for

18   his 2012 claim because the 2011 employment actions were not alleged in his Charge. *Id.* Even if

19   Adetuyi's claims regarding the 2011 promotions were included in his administrative complaint,

20   the City argues that they are time barred because any such complaint must be brought within one

21   year of the date the alleged unlawful practice occurred. *Id.* at 6. In response, Adetuyi states that

22   he does not base claims on the pre-2012 promotions, and they are included only as evidence that

23   he was not allowed to apply for the provisional appointments. Opp'n at 1. Thus, as Adetuyi

24   admits that he is not bringing any claims based on the 2011 promotions, the City's argument is

25   moot.

26   **B.      Title VII**

27           As to his EEOC claims, the City argues that Adetuyi cannot establish that he obtained a

28   right-to-sue letter from the EEOC, and this Court therefore has no jurisdiction to adjudicate his

6

Title VII claims of race discrimination and retaliation.  Mot. at 6.

In response, Adetuyi argues that he is not required to obtain a right-to-sue letter; instead, the only requirement is that he be "entitled" to one.  Opp'n at 5.  Adetuyi directs the Court's attention to a letter issued by the EEOC on November 18, 2013, in which the EEOC stated that it was terminating the processing of his Charge because it duplicated his DFEH Charge.  Adetuyi Decl., Exh. 1, Dkt. No. 36.  Adetuyi maintains that the November 18 letter is the equivalent of a right-to-sue letter.  Opp'n at 6.  In the alternative, Adetuyi argues that the subsequent issuance of a right-to-sue letter cures any defect as long as the premature filing has not prejudiced the employer or prevented the EEOC from performing its duties, and he has now requested a right-to-sue letter from the EEOC.  *Id.*

An individual seeking relief under Title VII must file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred" or within 300 days if the individual first "institute[s] proceedings with a State or local agency with authority to grant or seek relief from such [alleged unlawful] practice."  42 U.S.C. § 2000e-5(1).  If the EEOC does not act on the charge within 180 days, the EEOC must notify the individual that "a civil action may be brought against the respondent named in the charge … by the person claiming to be aggrieved" within 90 days.  *Id.* at § 2000e-5(f)(1).  "A claimant cannot file a lawsuit until receiving a right-to-sue notice from the agency that specifically enforces those laws."  *Dornell v. City of San Mateo*, 2013 WL 5956316, at *4 (N.D. Cal. Nov. 7, 2013) (citing *Alberti v. City & Cnty. of S.F. Sheriff's Dept.*, 32 F. Supp. 2d 1164, 1174 (N.D. Cal. Nov. 25, 1998) ("An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of remedies as to FEHA claims.")); *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994) ("an EEOC right-to-sue notice satisfies the requirement of exhaustion of administrative remedies only for purposes of an action based on Title VII")).

Even if Adetuyi's November 18 letter from the EEOC terminating processing of his charge does not qualify as a right-to-sue letter, his failure to obtain such a letter is not necessarily fatal.  "A Title VII complainant may file an action prior to receiving [a] right to sue letter, provided there is not evidence showing that the premature filing precluded the [EEOC] from performing its

United States District Court
Northern District of California

7

administrative duties or that the defendant was prejudiced by such filing." *Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 825, 885 n.3 (9th Cir. 2005) (quoting *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990)).  Instead, "[c]ourts typically look to the relative fault of the parties to determine whether the failure to obtain a right-to-sue letter should be excused." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).  "[W]here … a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency." *Id*. As such, "the subsequent issuance of [a] 'right to sue' letter[] cure[s] any jurisdictional defect" when the letter is issued before trial.  *Wrighten v. Metro. Hosp., Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984).

Here, Adetuyi's failure to obtain a right-to-sue letter from the EEOC does not bar his case, provided he is able to obtain one before trial.  It is undisputed that the DFEH sent Adetuyi a right-to-sue letter on August 13, 2012.  Def.'s Req. for Jud. Notice, Exh. 10.  That letter informed Adetuyi that his complaint was dual filed with the EEOC.  *Id*.; *see also Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1244 (9th Cir. 2010) ("Pursuant to "Worksharing Agreements" between the DFEH and the EEOC in effect when [plaintiff] filed his DFEH charges, the State agency was the agent of the EEOC for the purpose of receiving ... charges." (internal quotation omitted)).  Upon receiving the DFEH right-to-sue notice, Adetuyi became entitled to a right-to-sue letter from the EEOC within 180 days, or by February 9, 2014.  *See Rucker v. Sacramento Cnty. Child Protective Serv.*, 462 F. App'x 762, 763 (9th Cir. 2011) ("Once the DFEH [right-to-sue] letter issued, an EEOC charge was deemed filed; [plaintiff] was entitled to a right-to-sue letter from the EEOC 180 days thereafter").  Because the DFEH has issued a right-to-sue letter and Adetuyi is entitled to such a letter from the EEOC, Adetuyi's claims may proceed absent a letter from the EEOC.  *See Smith v. Johnson*, 2012 WL 1438898 at *2 (N.D. Cal. Apr. 25, 2012) ("Filing a charge with the EEOC, however, is not necessarily a prerequisite to filing suit in federal court. '[W]here ... a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided [he] has received a right-to-sue letter from the appropriate state agency,' which, in California, is the [DFEH]." (quoting *Surrell*, 518 F.3d at 1105)); *Mendoza v. Lehigh Hanson*

8

United States District Court
Northern District of California

*Heidelberg Cement Grp.*, 2011 WL 4479515 at *2 n.5 (N.D. Cal. Sept. 25, 2011) ("[W]hile failure to receive an EEOC notice would generally preclude an action in this Court 'where, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency.'") (quoting *Surrell*, 518 F.3d at 1105); *Norwood v. Leland Stanford Jr. Univ.*, 2004 WL 2203553 at *5 (N.D. Cal. Sept. 29, 2004) ("Yet 'it is entitlement to a 'right to sue' notice rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under § 2000e-5(f)(1).'" (quoting *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir.1982)). Accordingly, the Court DENIES the City's Motion based on failure to obtain a right-to-sue notice from the EEOC.

## TITLE VII CLAIMS

As to the substance of Adetuyi's Title VII claims, the City argues that he cannot establish a prima facie claim of either discrimination or retaliation.  Mot. at 8, 10.  Regarding the discrimination claim, the City does not challenge the fact that Adetuyi is a member of a protected class.  Rather, the City argues that Adetuyi was not denied a promotion because he "did not or was unable to apply for the position in question."  *Id.* at 8 (quoting Rogers Decl., Exh. 12 at 11, Dkt. No. 37).  The City further argues that the length of time between Adetuyi's protected activity and the allegedly adverse employment action is too great to establish a causal connection to make a prima facie case of retaliation.  *Id.* at 10.

In response, Adetuyi argues that he can establish a prima facie case for discrimination because he "applied for the position by being in the first rank of the eligibility list."  Opp'n at 7. He contends that Ms. Guevara prevented him from applying by terminating the eligibility list.  *Id.* at 7.  Adetuyi also argues that the amount of time between the protected activity and the allegedly adverse employment action does not preclude finding a causal connection between the two, thus satisfying the elements for a prima facie claim of retaliation.  *Id.* at 9.

In its Reply, the City counters that the individuals on the eligibility list were candidates for a permanent promotional opportunity only while the list was active.  Reply at 2.  None of the candidates, including Adetuyi, could have applied for Mr. Dietrich's position before it was vacant,

1   and the eligibility list expired prior to Mr. Dietrich's retirement.  *Id.*  As such, the City contends

2   Adetuyi could not have been denied the position.  *Id.*

3   **A.     Legal Standard**

4          Title VII makes it unlawful for an employer to "discriminate against any individual with

5   respect to his compensation, terms, conditions, or privileges of employment, because of such

6   individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2.  It also prohibits

7   an employer from retaliating against an individual because he or she has made a charge of

8   discrimination or opposed a discriminatory practice.  *Id.* § 2000e–3.  Title VII claims involving

9   alleged discrimination and retaliation are both governed by a burden-shifting framework.

10         Initially, the burden rests with the plaintiff to establish a prima facie case of discrimination

11  or retaliation.  *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973).  "[T]he requisite

12  degree of proof necessary to establish a prima facie case for Title VII … claims on summary

13  judgment is minimal."  *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005)

14  (internal quotations omitted).  To establish a prima facie case of discrimination, the plaintiff must

15  show that: (1) he belongs to some protected class; (2) he was qualified for her position; (3) he

16  suffered an adverse employment action; and (4) the employer treated similarly situated employees

17  outside his classification more favorably.  *Chuang v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d

18  1115, 1123 (9th Cir. 2000).  To establish a prima facie case of retaliation, a plaintiff must show

19  "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the

20  protected activity and the adverse employment action."  *Cornwell v. Electra Cent. Credit Union*,

21  439 F.3d 1018, 1034-35 (9th Cir. 2006).

22         If the plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to

23  articulate some legitimate, nondiscriminatory reason' for the adverse action."  *Texas Dep't of*

24  *Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at

25  802).  Once the defendant has done so, the burden shifts back to the plaintiff, who must

26  demonstrate that the employer's reason for the adverse employment decision is a pretext for a

27  discriminatory or retaliatory motive.  *Burdine*, 450 U.S. at 253; *Wallis v. J.R. Simplot Co.*, 26 F.3d

28  885, 889 (9th Cir. 1994) (quoting *Lowe v. Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985)).  In this

United States District Court
Northern District of California

final analysis, the plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Schuler v. Chronicle Broadcasting Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986).  Rather, he must offer "specific and significantly probative evidence" that the proffered reasons are pretextual.  *Id.*  A plaintiff can show pretext "either (1) directly by persuading the court that a discriminatory reason more likely motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

**B.      Discrimination**

> **1.      Prima Facie Case**
>
> > ***a.      Protected Class***

The parties do not dispute that Adetuyi satisfies the first element of a prima facie case of discrimination.  Adetuyi, who is Black, alleges race discrimination.  Compl. at 2; Adetuyi Decl. ¶ 10.  Race is a protected classification.  42 U.S.C. § 2000e-2; *Cornwall v. Electra Cent. Credit Union*, 439 F.3d 1018, 1032 (9th Cir. 2006) (African-American plaintiff is member of protected class under Title VII).  The first element of a prima facie case of discrimination is therefore satisfied.

> > ***b.      Qualifications***

The parties dispute whether Adetuyi was qualified for the acting supervisor position. Adetuyi argues he was in fact qualified as he was in the first rank of the eligible list and sought the promotion to supervisor.  Opp'n at 7.  In its Motion, the City argues Adetuyi was not qualified because he "did not or was unable to apply for the position in question."  Mot. at 8.

It is undisputed that Adetuyi was one of twelve candidates who ranked number one on the eligible list and that the candidates in the top three ranks of the list were equally available for promotion.  DUF Nos. 6-7.  Adetuyi had therefore at least once before qualified to be considered for a promotion to a 2909 Hospital Eligibility Supervisor position.  DUF Nos. 5-6.  "[I]n the summary judgment context, [courts] construe all facts in the light most favorable to the non-moving party."  *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).  Thus, viewing the facts in Adetuyi's favor, it is reasonable to conclude that he could have been qualified for the

United States District Court
Northern District of California

1   promotion when the June 22, 2012 vacancy opened for that same position.  As such, Adetuyi

2   satisfies the minimal burden of proof necessary to establish the second element of his prima facie

3   case.

4                       c.      *Adverse Employment Action*

5           Adetuyi maintains that he applied for the position "by being in the first rank of the

6   eligibility list," but that the City prevented him from applying by terminating the eligibility list.

7   Opp'n at 7.  He further argues that the City "did not post the vacancy nor invite applications."  *Id.*

8   The City, however, contends there was no adverse employment action because Adetuyi "did not or

9   was unable to apply for the promotion."  Mot. at 8 (quoting Rogers Decl., Exh. 12).  As such, the

10  City did not deny him the position of Acting Supervisor.  *Id.*

11          Under Title VII, "the plaintiff must show that [his] employer has taken an adverse action

12  that 'materially affect[s] the compensation, terms, conditions, or privileges of the [plaintiff's]

13  employment.'"  *Rodriguez v. Pierce Cnty.*, 267 F. App'x 556, 557 (9th Cir. 2008) (quoting

14  *Chuang*, 225 F.3d at 1126).  Examples of adverse employment actions include "termination,

15  dissemination of a negative employment reference, issuance of an undeserved negative

16  performance review and refusal to consider for promotion."  *Brooks v. City of San Mateo*, 229

17  F.3d 917, 928 (9th Cir. 2000).

18          It is undisputed that the City did not select Adetuyi to be acting supervisor when the

19  position became available in June 2012.  DUF No. 14.  "Failure to promote is actionable under

20  Title VII."  *Breiner v. Nevada Dep't of Corr.*, 610 F.3d 1202, 1206 (9th Cir. 2010); *see also*

21  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) ("Failure to promote is a

22  common manifestation of disparate treatment.").  Although the parties dispute whether Adetuyi

23  applied for the position, the Court must construe the alleged facts in the light most favorable to the

24  nonmoving party.  *Ellison*, 357 F.3d at 1075.  Accepting for purposes of summary judgment

25  Adetuyi's allegation that he applied for the acting supervisor position by qualifying for the

26  eligibility list, Adetuyi satisfies the third element of a prima facie case of discrimination.

27                      d.      *More Favorable Treatment*

28          "Under Title VII, an individual suffers disparate treatment 'when he or she is singled out

United States District Court
Northern District of California

12

1  and treated less favorably than others similarly situated on account of race.'" *McGinest v. GTE*

2  *Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting *Jauregui v. City of Glendale*, 852 F.2d

3  1128, 1134 (9th Cir.1988)) (internal quotation omitted).

4         Recognizing the minimal burden of proof necessary to establish a prima facie case under

5  Title VII, the Court finds that Adetuyi can establish that the City treated employees outside his

6  classification more favorably.  The City selected Ms. Batres, who is Hispanic, as an acting

7  supervisor.  PUF Resp. to DUF No. 14.  By being placed on the eligibility list, Adetuyi was

8  considered qualified for a promotion to a supervisory position at that time.  Likewise, Ms. Batres

9  was deemed qualified to be acting supervisor based on her experience and relevant knowledge.

10  Mot. at 9.  Thus, as a reasonable jury could determine that both were qualified for the position.

11  Further, Adetuyi and Ms. Batres are members of different classes on account of their race.  "It is

12  well-settled that an employee may prove his or her claim of unlawful discrimination by evidence

13  that other employees of different races or national origin were treated differently in similar

14  circumstances." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990).  The Court

15  also notes that the City does not contest this element.  Accordingly, the Court finds that Adetuyi

16  has established a prima facie case of discrimination.

17         2.     <u>Legitimate, Nondiscriminatory Reason</u>

18         Next, the Court must determine whether there is a legitimate, nondiscriminatory

19  explanation for the City's actions.  "If established, the prima facie case creates a rebuttable

20  presumption that the employer unlawfully discriminated against the plaintiff." *Dominguez-Curry*

21  *v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).  The City offers several reasons to

22  support the decision not to promote Adetuyi to the position of Acting Supervisor when it became

23  available in June 2012.

24         First, the City argues that Ms. Batres was more qualified than Adetuyi because she "had

25  previously served intermittently as an acting supervisor and had knowledge and experience

26  relevant to the position."  Reply at 4.  Second, the City points out that the eligibility list expired on

27  June 7, 2012, 22 days before the position became vacant on June 29, 2012.  DUF Nos. 13, 15.

28  Thus, the City maintains that the opportunity for a permanent promotional position had ended for

United States District Court
Northern District of California

1  all candidates on the list, including Adetuyi.  Reply at 2.  The City further argues that Adetuyi

2  could not apply for the position while the list was active because the position was not yet

3  available.  *Id*.  Finally, the City notes that it did not select anyone, let alone Adetuyi, who was on

4  the expired list to become Acting Supervisor.  *Id.* at 4.

5      "[T]he employer has discretion to choose among equally qualified candidates, provided the

6  decision is not based upon unlawful criteria."  *Burdine*, 450 U.S. at 259.  "When the plaintiff has

7  proved a prima facie case of discrimination, the defendant bears only the burden of explaining

8  clearly the nondiscriminatory reasons for its actions."  *Id.* at 260.  Here, the Court finds that the

9  City has provided a legitimate and nondiscriminatory reason for its decision to promote Ms.

10  Batres: she previously served as a supervisor and had knowledge and experience relevant to the

11  position.  *See Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1275 (9th Cir. 1981) (employer's

12  decision to promote individual with superior qualifications is legitimate and nondiscriminatory

13  reason for denying promotion); *Hines v. Cal. Pub. Util. Comm'n*, 2010 WL 2985536, at *6 (N.D.

14  Cal. July 27, 2010) (employer's "evidence that [African-American] Plaintiff was not promoted

15  because the other candidates were more qualified" is nondiscriminatory reason); *Tam v. Potter*,

16  2008 WL 2811989, at *4 (N.D. Cal. July 21, 2008) (employer's reason that other applicants were

17  deemed better qualified for promotion based on two-stage evaluation satisfied burden); *Wilborn v.

18  Ashcroft*, 222 F. Supp. 2d 1192, 1198 (S.D. Cal. 2002) (employer proffered legitimate and

19  nondiscriminatory reason for not promoting African-American plaintiff where other applicant

20  possessed more supervisory experience and had superior interview skills).

21      3.   Pretext

22      As the City has shown a legitimate, nondiscriminatory reason for its actions, the burden

23  shifts back to Adetuyi, who must demonstrate that the City's reason for the adverse employment

24  decision is a pretext for a discriminatory or retaliatory motive.  Adetuyi argues that "Ms. Guevara

25  requested that the list expire" when "[i]t could and should have been extended."  Opp'n at 10.  He

26  contends that Ms. Guevara "took steps to ensure that the eligibility list would expire prior to Mr.

27  Dietrich's retirement date," which indicates "that Ms. Guevara was manipulating the process to

28  prevent the promotion of Plaintiff."  *Id.*  Adetuyi further contends that because he was "the most

United States District Court
Northern District of California

1   qualified candidate for promotion, Plaintiff could have been appointed a provisional supervisor."

2   *Id.*

3       In response, the City contends that Adetuyi cannot demonstrate pretext because neither he

4   nor any of the remaining 15 candidates from the eligibility list were chosen to be the Acting

5   Supervisor.  Mot. at 9; Reply at 4.  Additionally, the City maintains that Ms. Batres had

6   "knowledge and experience relevant to the position," as she had intermittently served as an acting

7   supervisor since 2006.  Mot. at 9; Reply at 4.

8       A plaintiff can show pretext "either (1) directly by persuading the court that a

9   discriminatory reason more likely motivated the employer or (2) indirectly by showing that the

10   employer's proffered explanation is unworthy of credence."  *Burdine*, 450 U.S. at 256.  Examples

11   of direct evidence of discriminatory conduct include "comments from supervisors betraying bias

12   or animus against [African-American] workers."  *Earl v. Nielson Media Research, Inc.*, 658 F.3d

13   1108, 1113 (9th Cir. 2011); *see also Coghlan*, 413 F.3d at 1095 ("Direct evidence typically

14   consists of clearly sexist, racist, or similarly discriminatory statements or actions by the

15   employer.").  On the other hand, "circumstantial evidence … tends to show that the employer's

16   proffered motives were not the actual motives because they are inconsistent or otherwise not

17   believable."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).  "Where the

18   evidence of pretext is circumstantial, rather than direct, the plaintiff must present 'specific' and

19   'substantial' facts showing that there is a genuine issue for trial."  *Noyes v. Kelly Services*, 488

20   F.3d 1163, 1170 (9th Cir. 2007) (quoting *Godwin*, 150 F.3d at 122).

21       Here, the record does not support Adetuyi's contention that Ms. Guevara "sought to have

22   the list expire, when she learned that Mr. Dietrich was going to retire" and "that the list otherwise

23   would have been extended."  The eligibility list itself provides for a twelve-month duration, and it

24   was authorized on June 8, 2011.  Lee Decl., Exh. B, Dkt. No. 31.  There is also no direct evidence

25   showing that Ms. Guevara allowed the list to expire to avoid promoting Adetuyi.  In fact, the

26   direct evidence shows the contrary.  In an inter-office memorandum to Elaine Lee, Ms. Guevara

27   explained that she declined to extend the eligibility list because "[i]ndividuals on the current

28   eligible list were ranked based on a Training and Experience evaluation," and she wanted "the

United States District Court
Northern District of California

1    next evaluation process to be one where specific knowledge and skills are evaluated during the

2    examination process."  Rogers Decl., Exh. 6 (Guevara Memo., attached as Exh. 3 to the Guevara

3    Depo.).  As to Adetuyi's argument that Ms. Guevara discriminated against him by letting the list

4    expire, the fact that *none* of the remaining candidates on the eligibility list were selected to be

5    Acting Supervisor further undercuts this self-serving allegation.  There is no guarantee that

6    Adetuyi would have been chosen to be Acting Supervisor even if the eligibility list had been

7    extended.  All of the candidates on the list were equally available for promotion.  DUF Nos. 7, 11.

8        Additionally, Adetuyi's assertion that he "was the best qualified candidate to fill the

9    position vacated by Mr. Dietrich" fails to allege sufficient facts to show that the City's proffered

10   nondiscriminatory reason is pretext.  "[Q]ualifications evidence may suffice, at least in some

11   circumstances, to show pretext."  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2008).  Thus,

12   "[e]vidence of a plaintiff's superior qualifications, standing alone, may be sufficient to prove

13   pretext."  *Shelley v. Green*, 666 F.3d 599, 610 (9th Cir. 2012) (citing *Raad v. Fairbanks North*

14   *Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003)); *see also Raad*, 323 F.3d at 1194

15   (quoting *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1492 (9th Cir. 1995)) ("finding 'that a Title

16   VII plaintiff's qualifications were clearly superior to the qualifications of the applicant selected is

17   a proper basis for a finding of discrimination.'").

18       However, Adetuyi's "subjective personal judgments of [his] competence alone do not raise

19   a genuine issue of material fact."  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir.

20   1996) (citing *Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986)).

21   It is undisputed Adetuyi has not served in a supervisory position.  DUF No. 11.  Although Adetuyi

22   contests Ms. Batres' qualifications for the position, PUF No. 16 ("Ms. Batres had not served as an

23   acting supervisor at Laguna Honda, in Plaintiff's Section for the preceding eight years."), he has

24   not demonstrated that his qualifications are "clearly superior" to those of Ms. Batres, even

25   assuming she had not previously served as acting supervisor in his section.  Adetuyi himself has

26   not held a provisional supervisory position, nor does he suggest other ways he might be a more

27   qualified candidate.  DUF No. 11.

28       Based on this analysis, the Court finds that Adetuyi has failed to meet his burden to

United States District Court
Northern District of California

16

1    demonstrate the City's reasons for failing to promote him are pretextual.  Accordingly, Adetuyi is

2    not able to establish a claim of discrimination under Title VII and the Court GRANTS the City's

3    Motion for Summary Judgment on this claim.

4    **C.     Retaliation**

5           1.     <u>Prima Facie Case</u>

6                  *a.     Protected Activity*

7           The undisputed evidence establishes that Adetuyi engaged in protected activity in 2007,

8    when he initiated a lawsuit against the City and his former supervisor alleging harassment,

9    retaliation, and failure to prevent harassment and retaliation.  Def.'s Req. for Jud. Notice, Exh. 1.

10   Title VII prohibits discrimination against an employee for "making charges, testifying, assisting,

11   or participating in enforcement proceedings." 42 U.S.C. § 2000e–3(a).  Adetuyi therefore satisfies

12   the first element of a prima facie case of retaliation.

13                 *b.     Adverse Employment Action*

14          As with his discrimination claim, Adetuyi argues that he applied for the 2012 promotion

15   "by being in the first rank of the eligibility list," but that the City prevented him from applying by

16   terminating the eligibility list.  Opp'n at 7.  He also alleges that the City "did not post the vacancy

17   nor invite applications." *Id.*  However, in its Motion, the City contends it could not have denied

18   Adetuyi the promotion because he did not apply for it.  Mot. at 8.  As such, the City argues there is

19   no adverse employment action.  *Id.*

20          The anti-retaliation provision of Title VII "covers those (and only those) employer actions

21   that would have been materially adverse to a reasonable employee or job applicant…. [T]hat

22   means that the employer's actions must be harmful to the point that they could well dissuade a

23   reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa*

24   *Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006).  "A tangible employment action constitutes a

25   significant change in employment status, such as hiring, firing, failing to promote, reassignment

26   with significantly different responsibilities, or a decision causing a significant change in benefits."

27   *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

28          As discussed above, Plaintiff presents sufficient evidence to suggest that he may have

United States District Court
Northern District of California

17

suffered an adverse employment action in August 2012, when the City did not promote him to Acting Supervisor.  Plaintiff therefore meets the second element.

               *c.*       *Causal Connection*

      Adetuyi argues that the City's decision not to promote him to Acting Supervisor is the result of his 2007 lawsuit.  Opp'n at 8-10.

      "Title VII retaliation claims must be proved according to traditional principles of but-for causation…. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Cent. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).  "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  "At the prima facie stage of a retaliation case, [t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Poland v. Chertoff*, 494 F.3d 1174, 1180 n.2 (9th Cir. 2007) (internal quotation omitted).

      In this case, the City adopted the eligibility list one month after the Court of Appeal affirmed the trial court's decision.  PUF Nos. 3, 5.  After this point, Adetuyi did not receive promotions in 2011 and 2012.  DUF Nos. 11, 14.  Adetuyi argues that (1) he "was not notified of vacant positions and was not interviewed for provisional appointments"; (2) "Ms. Guevara acted to have the eligibility list expire in May, 2012"; and (3) he "received a less-than-excellent performance evaluation." *Id*. at 9-10.  Adetuyi also contends it was not possible for the City to retaliate against him until the positioned opened. *Id*. at 10.

      Additionally, there is no question that the City was aware of Adetuyi's 2007 lawsuit.  Ms. Guevara also knew of the lawsuit as she testified at the trial.  Adetuyi Decl. ¶ 3.  The City's and Ms. Guevara's knowledge of the protected conduct allows a finding that a causal connection exists between the protected activity and the alleged adverse action.  "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."

18

*Cohen v. Fred Meyer*, 686 F.2d 793, 978 (9th Cir. 1982)).  It is therefore reasonable to conclude that Adetuyi meets his burden in establishing this element.

Despite this, the City argues that Adetuyi cannot establish a causal connection because the length of time between the lawsuit and the failure to promote is too great.  Mot. at 10-11.  The City further contends that Adetuyi's "evidence does not raise an inference that his filing and prosecuting an unsuccessful lawsuit was likely the reason for the City's decision," given that it prevailed in the 2007 case.  *Id*. at 11.

It is easier to find a causal connection when the alleged adverse employment action closely follows the protected conduct.  *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) ("'causation can be inferred … where an adverse employment action follows on the heels of protected activity'" (quoting *Villiarimo v. Aloha Island Air, Inc*. 281 F.3d 1054, 1065 (9th Cir. 2002)); *see also Dawson v. Entek Intern*, 630 F.3d 928, 937 (9th Cir. 2011) ("In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of…the prima facie case").

Adetuyi filed his prior lawsuit against the City in March 2007.  PUF No. 1.  The trial court granted the City's Motion for Judgment Notwithstanding the Verdict in March 2009, and the Court of Appeal affirmed in May 2011.  PUF Nos. 2-3.  Thus, there is at most a period of five years between the time Adetuyi initiated the protected activity and the City's failure to promote him in 2012.  At a minimum, one year separates the Court of Appeals' affirmation and the failure to promote.  However, even considering the shorter amount of time, a one year lapse generally does not support an inference of causation.  *See Villiarimo*, 281 F.3d at 1065 ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."); *Schiff v. City & Cnty. of S.F.*, 528 F. App'x 743, 746 (9th Cir. 2013) ("[F]ive years between the filing of [plaintiff's] lawsuit in 2003 and the alleged retaliation in 2008 undermined the required causal link between the protected activity and the adverse employment action.").  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

United States District Court
Northern District of California

19

must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1067-70 (9th Cir. 2003) (nine days between plaintiff's complaints of discrimination and her termination supports finding of causation); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (causation found where plaintiff was laid off four months after supervisor asked if he dropped complaint and only one month after plaintiff filed second); *Johnson v. Alameda-Contra Costa Transit Dep't*, 2006 WL 2587293 at *7 (N.D. Cal. Sept. 8, 2006) (plaintiff's termination three to four months after filing two complaints supports inference of retaliation).

However, a large gap between the alleged adverse action and the protected conduct is not necessarily fatal. "[A] specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Cosaltzer v. City of Salem*, 320 F.3d 968, 986-87 (9th Cir. 2003). While "a lack of temporal proximity may make it more difficult to show causation, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Castillo v. Dominguez*, 120 F. App'x 54, 57 (9th Cir. 2005) (quoting *Porter v. Cal. Dep't of Corrs.*, 383 F.3d 1018, 1030 (9th Cir. 2004)). For instance, a pattern of ongoing retaliation following protected conduct supports a finding of causation. *See Wood v. Dollar Rent-A-Car Sys., Inc.*, 128 F. App'x 620, 622 (9th Cir. 2005) (manager with knowledge of plaintiff's protected activity and pattern of antagonism following protected conduct supported finding of causation).

Here, Adetuyi presents such evidence with examples of retaliatory acts that lead up to the 2012 failure to promote. He alleges Ms. Guevara testified against him at the prior trial. Opp'n at 2; Adetuyi Decl. ¶ 3. Also, the City adopted the eligibility list on June 8, 2011, one month after the Court of Appeal affirmed the trial court's decision. PUF No. 5. Adetuyi was on that list, but the City did not appoint him to a permanent promotion, though five candidates on that list received such promotions, none of whom are Black. PUF Nos. 6, 9; Compl. ¶ 7. Adetuyi also alleges that he "was not notified of vacant positions" or "interviewed for provisional appointments." Opp'n at 9. He maintains that "Ms. Guevara acted to have the eligibility list expire in May, 2012" so he

1   would not receive a promotion, and that he "received a less-than-excellent performance

2   evaluation." *Id*. at 9-10.

3        Based on Adetuyi's allegations of a pattern of ongoing retaliatory acts since his 2007

4   lawsuit against the City, it is possible to conclude that the retaliatory acts stemmed from his

5   protected conduct.  As such, Adetuyi satisfies the final element of a prima facie case of retaliation.

6        2.    Legitimate, Nondiscriminatory Reason

7        In support of its reason for not promoting Adetuyi, the City notes that "the eligible list

8   from which the five (5) permanent appointments in 2011 were made expired on June 7, 2012,"

9   before Mr. Dietrich retired on June 29, 2012.  Mot. at 11.  For that reason, the City contends that

10  none of the remaining candidates who were on that list, including Adetuyi, were selected to

11  become Acting Supervisor.  *Id*. at 11-12.  The City further contends that "Ms. Batres had

12  previously served intermittently as an acting supervisor and had knowledge and experience

13  relevant to the position."  *Id*. at 11.  As discussed above, the Court finds that the City has provided

14  a legitimate and nondiscriminatory reason for its decision to promote Ms. Batres.  Thus, the

15  burden shifts to Adetuyi to show that the City's proffered reasons are pretextual.

16       3.    Pretext

17       Adetuyi and the City raise the same pretext arguments as for his discrimination claim.

18  Adetuyi argues that "Ms. Guevara requested that the list expire" when "[i]t could and should have

19  been extended."  Opp'n at 10.  He argues that but for Ms. Guevara's measures "to ensure that the

20  eligibility list would expire prior to Mr. Dietrich's retirement date, . . . the list would have been

21  extended until a new examination took place."  *Id*.  Additionally, Adetuyi contends that "as the

22  most qualified candidate for promotion, Plaintiff could have been appointed a provisional

23  supervisor."  *Id*.

24       In response, the City argues that Adetuyi's allegations do not "create a triable material

25  issue of pretext."  Reply at 4.  The City contends that Adetuyi's accusation that Ms. Guevara

26  "allow[ed] the eligibility list to expire is not specific and substantial evidence that the selection of

27  Ms. Batres was a pretext for … retaliation."  *Id*. at 5.  Similarly, the City argues that "Plaintiff's

28  subjective belief that the challenged employment action was unwarranted," as well as his opinion

1   as to whether "Ms. Batres was an effective acting supervisor or whether other employees,

2   including Plaintiff, that were on the expired eligibility list would have been more effective" do not

3   constitute evidence of pretext.  *Id.*

4           As discussed above, the Court finds that Adetuyi fails to meet his burden to demonstrate

5   the City's reasons for failing to promote him are pretextual.  The record does not support his

6   contention that Ms. Guevara sought to have the list expire when she learned that Mr. Dietrich was

7   going to retire as the eligibility list itself provides for a twelve-month duration.  Further, there is

8   no direct evidence showing that Ms. Guevara allowed the list to expire to avoid promoting

9   Adetuyi.  As discussed above, none of the remaining candidates on the eligibility list were selected

10  to be Acting Supervisor, Adetuyi has not demonstrated that his qualifications are superior to those

11  of Ms. Batres, and Adetuyi himself has not held a provisional supervisory position.  Therefore, as

12  Adetuyi has failed to establish pretext, he cannot establish a claim of retaliation under Title VII.

13  Accordingly, the Court GRANTS the City's Motion for Summary Judgment on this claim.

14                                **FEHA CLAIMS**

15  **A.      Discrimination and Retaliation**

16          "Title VII of the Federal Civil Rights Act of 1964 is the federal counterpart to FEHA."

17  *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001).  Therefore, "California courts

18  apply the Title VII framework to claims brought under FEHA."  *Metoyer v. Chassman*, 504 F.3d

19  919, 941 (9th Cir. 2007) (citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000)); *see also*

20  *State Dep't of Health Serv. v. Superior Court*, 31 Cal. 4th 1026, 1040 (2003) ("California courts

21  often look to Title VII in interpreting FEHA."); *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 463

22  (2005) (California "courts frequently turn to federal authorities interpreting Title VII of the Civil

23  Rights Act of 1964 (Title VII) for assistance in interpreting the FEHA" (internal citation

24  omitted)); *Alatraqchi v. Uber Tech., Inc.*, 2013 WL 4517756 at *7 (N.D. Cal. Aug. 22, 2013)

25  ("Plaintiff's Title VII claims would still fail for the same reasons his FEHA claims fail because the

26  alleged facts and the legal framework are the same for both sets of claims." (citing *Metoyer*, 504

27  F.3d at 941)).  Thus, as the Court has determined Adetuyi cannot support claims of discrimination

28  and retaliation under Title VII, his FEHA claims fail for the same reasons.  *See Haley v. Cohen &*

United States District Court
Northern District of California

*Steers Capital Mgmt., Inc.*, 871 F. Supp. 2d 944, 956 (after dismissing plaintiff's Title VII claim, court dismissed FEHA claims as "the same analysis that extends to the foregoing … claim[] under Title VII … pertains to plaintiff's FEHA claim"); *Metoyer*, 504 F.3d at 941 (state law discrimination and retaliation claims reversed for the same reasons as federal law claims); *Madsen v. Assoc. Chino Teachers*, 317 F. Supp. 2d 1175, 1184 (E.D. Cal. 2004) (court applied same analysis to find no discrimination under Title VII or FEHA).  Accordingly, the Court GRANTS the City's Motion for Summary Judgment as to Adetuyi's discrimination and retaliation claims under FEHA.

**B.     Failure to Protect**

   In his Complaint, Adetuyi alleges the City "failed to take all reasonable steps to prevent discrimination and retaliation from occurring" despite its knowledge of his complaints and prior lawsuit.  Compl. ¶¶ 16-17.  In its Motion, the City contends that because summary judgment is proper for Adetuyi's FEHA discrimination and retaliation claims, summary judgment is also proper for his claim of failure to prevent discrimination under FEHA.  Mot. at 12.  Adetuyi does not address this issue in his Opposition.

   Under FEHA, it is illegal  "[f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov. Code § 12940(k).  When a plaintiff seeks to recover damages based on a claim of failure to prevent discrimination or harassment, he must show three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm.  *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing Cal. Civil Jury Instruction 12.11).

   However, no liability can arise from not preventing discrimination or retaliation that did not occur.  *See Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) (affirming trial court's grant of judgment as a matter of law for defendants where jury found that there had been a failure to protect but there had been no discrimination).  In *Trujillo*, the California Court of Appeal

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    explained that it does "not believe the statutory language supports recovery on such a private right

2    of action where there has been a specific factual finding that no such discrimination or harassment

3    actually occurred at the plaintiffs's [sic ] workplace." *Id.* at 288-89.

4        Here, as discussed above, the Court finds that Adetuyi has failed to establish his claims of

5    discrimination and retaliation.  As such, there can be no liability for failure to protect.  *Id.*; *see also*

6    *Hamilton v. St. Joseph's Med. Cntr.*, 2014 WL 2624976, at *7 (E.D. Cal. June 12, 2014). ("When

7    there is no viable claim of discrimination, as here, there is no claim for failure to prevent

8    discrimination.")  Accordingly, the Court GRANTS the City's Motion for Summary Judgment as

9    to Adetuyi's failure to protect claim.

10                          **CONCLUSION**

11        Based on the analysis above, the Court hereby GRANTS the City's Motion for Summary

12    Judgment.  Final judgment shall be entered accordingly.

13        **IT IS SO ORDERED.**

14

15    Dated: August 7, 2014

16

17                     _____
                    MARIA-ELENA JAMES
                    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

24